[No. 20023.   Department One.   December 2, 1926.]

ESTHER M. SANDBERG, *Appellant*, v. PETER SANDBERG, *Respondent*.[1]

[1] GIFTS (8)—EVIDENCE—SUFFICIENCY. The evidence sustains findings that a deed to a daughter was not intended as a gift, where there was much evidence to show that it was made to defraud creditors of the grantor, that the daughter's interest was resold and the check for the proceeds endorsed by her and delivered to the grantor who appropriated it to his own use.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 5, 1925, upon findings in favor of the defendant in an action to establish a gift, tried to the court. Affirmed.

*C. H. Steffen* and *Andrew J. Balliet,* for appellant.

*E. N. Eisenhower,* for respondent.

FULLERTON, J.—On and prior to October 12, 1911, the respondent, Peter Sandberg, and his then wife, Matilda Sandberg, were the owners of certain real property situated in the city of Tacoma. On the specific date given, they conveyed the property by deed to one Oscar M. Berg, a brother of Matilda Sandberg. Berg, on the same day, re-conveyed the property to the grantors. The first of the deeds was immediately placed of record, and the second was retained in the

[1]Reported in 250 Pac. 944.

possession of Matilda Sandberg, without recording. Peter Sandberg had incurred large obligations, and the purpose of the deeds was to conceal the property from the holders of these obligations.   In the year 1920, marital differences arose between Peter and Matilda, and Matilda instituted an action for a divorce. While this action was pending, or in its anticipation, Matilda caused a letter to be written to her brother, who was then in Sweden, asking her brother to execute a deed to the property to herself individually, a form for which was enclosed with the letter, telling him that the old deed would be destroyed on the receipt of the new one.   The brother, instead of complying with the request, made claim to the property through the Swedish consul, resident at Seattle, and that officer made a demand upon her for an accounting of the rents and profits of the property.   This turn of the affairs seemingly alarmed Matilda, and she took advice of her counsel, and a consultation was had, into which Peter was called.   This consultation seems to have been conducted with some acrimony.   It is not necessary, however, to set forth what there occurred, in detail.   Matilda desired Peter to convey the property to her.   This he emphatically declined to do; pointing out that such a transaction would be, in any event, to put the property within the reach of his creditors, as judgment had been taken on the obligations before mentioned, which were liens upon any real property he possessed; but his principal objection was that he did not desire to give away his interest in the property.   The final result of the conference was that Peter took the unrecorded deed which had been executed to himself and his wife by Berg in 1911, erased his own name therefrom and inserted in its stead that of Esther Sandberg, a daughter of himself

and Matilda, who had then reached the age of majority. In its changed form, the deed was shortly thereafter recorded.

The matter was suffered to rest in this condition until February 28, 1924. On that date, Matilda and Esther, by quit-claim deed, conveyed the property to "Malcolm E. Gunston, Trustee. " By a contemporaneous instrument executed by Peter, Matilda and Esther, it was stipulated that the trustee should take possession of the property, sell it for such price as he should deem fair and just, and, out of the proceeds of the sale, pay himself for his own services, pay the legal liens against the land, and pay a certain other described obligation, and divide the balance "equally between Matilda Sandberg and Esther Sandberg." The trustee executed the trust according to the terms of the stipulation, and, at the completion of the transaction, had in his possession the sum of $972.92, as the share to be distributed to Esther by the terms of the instrument defining the trust. This sum he paid to her by check, dated June 6, 1924, and, on the same date, took a writing from her acknowledging the receipt of the money. Esther indorsed the check and delivered it to her father, who, in turn, indorsed it and received the proceeds thereof from the bank upon which it was drawn.

[1] The present action was instituted by Esther against her father to recover the amount of the check. Her claim is that she acquired an undivided half interest in the real property as a gift from her father, and is, in consequence, entitled to a one-half interest in the proceeds derived from its sale. The testimony on the other side is that there was no gift. Indeed, the father very frankly testifies that the transaction was a scheme to keep the property beyond the reach of his creditors, and that all of the parties knew of the scheme and

participated therein. There is but little doubt that the mother understood the purpose and participated therein, evidently under the belief that, if the facts became known, her own interests might be jeopardized. The evidence of the daughter's knowledge of the transaction is not so clear. She denies such knowledge, and testifies that, after the change in the original deed had been made, her father informed her by letter that he had given to her his interest in the property. But she does not produce the letter, and she gives a rather unsatisfactory reason to account for its disappearance. Her answers, moreover, to questions put to her on cross-examination, are not altogether frank. Too often, she was compelled to resort to a faulty memory.

It was the opinion of the trial judge that no gift was intended, and that the entire transaction was tainted with fraud, of which all of the parties had knowledge and in which all participated. His conclusion was that there could be no recovery. With this opinion and conclusion, we feel constrained to agree; at least, we cannot conclude that the evidence preponderates the other way. The judgment will, therefore, stand affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.